**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ANDREW M. EADS**
Lux & Lux, P.A.
Shelbyville, Indiana

ATTORNEY FOR APPELLEES:

**WILLIAM B. KEATON**
Keaton and Keaton, P.C.
Rushville, Indiana



FILED
Mar 08 2013, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE SUPERVISED ESTATE OF GEORGE LEE COON, | ) ) ) | |
| MARK A. COON, | ) ) | |
| Appellant, | ) ) | |
| vs. | ) ) | No. 70A01-1208-ES-384 |
| ALLEN W. COON, DONALD L. MOSTER, JR., and BEVERLY S. MOSTER BROWN, | ) ) ) ) | |
| Appellees. | ) | |

APPEAL FROM THE RUSH CIRCUIT COURT
The Honorable Beth A. Butsch, Special Judge
Cause No. 70C01-1112-ES-54

**March 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issue</u>

Mark Coon appeals the trial court's grant of summary judgment regarding probate of the estate of his grandfather, George Coon. Mark presents two issues on appeal, one of which we find dispositive: whether the trial court properly admitted evidence relating to a post-nuptial agreement. Concluding that the evidence was properly admitted and that the agreement was in force, we affirm.

<u>Facts and Procedural History</u>

In 1971, George and his wife Rosa executed a post-nuptial agreement, the body of which provided:

> That the said George Lee Coon and Rosa Coon agree with the other, in consideration of the mutual promises of each to the other, that neither of them will, without the knowledge or consent of the other, change revoke or destroy the Will which each of them has made this date; and the Parties agree further, each with the other, that the survivor, whichever it be, will not change his or her Will subsequent to the death of the first one to die, nor will said survivor sell our real estate during the lifetime of said survivor, except for necessary maintenance, care, and medical expenses; it being the intention of both Parties that all property which they now own shall pass as they have separately and jointly determined and set forth in their respective Wills.
> Both Parties acknowledge that this Agreement is and shall be binding on them, their heirs and personal representatives.

Appellant's First Amended Appendix, Volume 2 at 63. In 2004, Rosa and George executed new wills that substantially mirrored each other. In 2005, Rosa died and her 2004 will was admitted to probate. In 2008, a petition was filed for appointment of a guardian over George; following a hearing, the court determined that George was incapacitated, and a guardian was appointed.[1] While the petition for guardianship was pending, George made a new will.

---

[1] The record implies that in 2006, a codicil to George's 2004 will was made; however, a copy of

2

George died on December 11, 2011, and George's child and step-children, Allen Coon, Donald Moster, and Beverly Brown (the "Children"), petitioned for probate of George's 2004 will. Mark then petitioned for probate of George's 2008 will. In April 2012, the Children filed for summary judgment, claiming that there were no genuine issues of material fact that George was of unsound mind when he made the 2008 will, and also that the 2008 will was unenforceable due to the 1971 post-nuptial agreement. Following a hearing, the trial court made findings of fact and conclusions of law and entered summary judgment for the Children on July 24, 2012. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Standard of Review

Our standard of review for a grant of summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In re Bender, 844 N.E.2d 170, 176-77 (Ind. Ct. App. 2006), trans. denied. The moving party bears the burden of designating sufficient evidence to eliminate any genuine factual issues and, once the moving party has fulfilled this requirement, the burden shifts to the nonmoving party to come forth with contrary evidence. Id. at 177. On appeal, we do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of

the codicil is not included with the record and the codicil is not the focus of the appeal. Because of our resolution of the contract issue, details relating to the codicil are irrelevant.

3

material fact for trial. Id. The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. Id. We are not limited to reviewing the trial court's reasons for granting summary judgment as the judgment may be affirmed upon any theory supported by the designated materials. Id.

## II. Post-Nuptial Agreement

Mark contends that the trial court judge improperly admitted a carbon copy of the 1971 post-nuptial agreement, contrary to Indiana Evidence Rule 1002, which requires an original writing to prove the content of that writing except as otherwise provided by the rules or by statute. However, Indiana Evidence Rule 1003 provides for the admissibility of duplicates "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." It appears that the Children believe that an original copy of the agreement was filed with the original petition, but that, perhaps because a special judge was sitting for the case, the judge was given copies of the filed materials. The hearing transcript indicates that counsel for Mark went to the county court to examine the original filing, and believed the document there to be a copy. At the hearing, the Children offered a carbon copy of the agreement. The judge noted on the record that the carbon copy had original signatures and that she remembered that type of paper being used when she started practicing law. It appears that a notary seal was also visible, as was the signature of the notary. Mark noted that there was not an original inked signature and objected to the admission of the carbon copy. The judge admitted the carbon copy as a substitute for the

4

(presumably photocopied) document in her file, and offered to let Mark submit whatever was designated in the original filing if he felt it would matter. There is no indication that he did so, or whether the designated document was an original top copy, another carbon copy, or some other type of copy.

Regardless, Mark does not question the authenticity of the original, nor does he contend that it was unfair to admit the duplicate.[2] He complains that the document admitted was a copy, but does not contend that the copy did not accurately represent the content and signatures of an original or that the 1971 agreement was not otherwise valid. Mark himself states that admission of secondary evidence is harmless when no dispute exists regarding its accuracy. Despite that, he seems only to contend that admission of any copy was per se error on the part of the trial court, absent an affidavit of what happened to the original. Considering Evidence Rule 1003, we do not agree. See also Levi v. State, 627 N.E.2d 1345, 1349 (Ind. Ct. App. 1994) (concluding that a copy was admissible where there was no complaint regarding the authenticity of the original or the unfairness of admitting a copy), trans. denied. It was proper for the trial court here to admit the carbon copy of the 1971 agreement.

Mark does not challenge the validity of the agreement, and the wording of the agreement appears to allow subsequent changes to George and Rosa's wills as long as they both knew of and consented to the changes—which it appears that they did in 2004—but to

---

[2] He does claim in his brief that he only first saw the document when, at the hearing, the Children produced the carbon copy. However, the transcript of the hearing makes it clear that he had already been to the county court to look at the original filing; furthermore even if that had been the first time he saw the document, any unfairness would not be related to the fact that a copy, rather than an original, was supplied.

prohibit any changes following the death of the first spouse.  Absent any indication that the agreement was not still in effect at the time of Rosa's death in 2005, it appears that the 2004 will was irrevocable and that any attempted changes via a codicil in 2006 or a new will in 2008 were void.  Because we conclude that the 2008 will is made void by the 1971 agreement, we need not reach Mark's issue regarding George's competency to make the 2008 will.

## Conclusion

Concluding that the trial court properly admitted the post-nuptial agreement, and that the agreement was still valid, we affirm.

Affirmed.

MAY, J., and PYLE, J., concur.